Samuel **ZANDS** and Sara Zands, Plaintiffs,

v.

Paul Imon **NELSON**, Ellen Eliza Nelson, Mildred Tacey, Jay Goodwin, Norma Goodwin, Stephen Kramer, Cletus Kramer, Fritz A. Nachant, Defendants.

Nos. 89–0989–GT, 90–1144–GT.

United States District Court, S.D. California.

Dec. 3, 1991.

---

Harry V. McGahey, McGahey & McGahey, A.P.C., San Diego, Cal., for Samuel Zands and Sara Zands.

John H. Stephens, Lynn M. Beekman, Robbins & Keehn, A.P.C., San Diego, Cal., for Paul Imon Nelson and Ellen Eliza Nelson.

Mildred Tacey, pro se.

Peter L. Garchie, Sharon M. Lawrence, Susan E. Leonard, Lewis, D'Amato, Brisbois & Brisgaard, San Diego, Cal., for Jay Goodwin and Norma Goodwin.

Carl J. Klunder, Karen A. Gruber, Ramsay, Johnson & Klunder, Irvine, Cal., for Fritz A. Nachant.

## MEMORANDUM OPINION
## AND ORDER

GORDON THOMPSON, Jr., District Judge.

### PROCEDURAL BACKGROUND

The procedural history of the case is important:

* On July 5, 1989, the plaintiffs filed a complaint in which federal jurisdiction was based on the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

* On November 14, 1989, the plaintiffs filed the first amended complaint, which added causes of action under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6924, 6925, and 6945.

* On June 26, 1990, plaintiffs gave a 60-day notice.

* On August 16, 1990, plaintiffs filed a second amended complaint and filed a new complaint which was identical, adding a RCRA claim under 42 § 6972(a)(1)(A).

* On July 1, 1991, plaintiffs filed a third amended complaint, which of significance in the present context changed the RCRA claim from §§ 6972(a)(1)(A) to § 6972(a)(1)(B).

On Monday, November 4, 1991 at 10:30 a.m., the parties came before the Court on three separate motions filed in this case. First, defendants PAUL IMON NELSON and ELLEN ELIZA NELSON filed a motion for summary judgment that was subsequently joined by defendants MILDRED TACEY, JAY AND NORMA GOODWIN, and FRITZ A. NACHANT, INC. ("Defendants' Motions"). Second, defendant FRITZ A. NACHANT, INC. had a pending motion from September 17, 1991, that the Court had ordered further briefing on ("Nachant's Motions"). And third, plaintiffs SAMUEL and SARA ZANDS filed a motion for partial summary judgment ("Plaintiffs' Motions"). Having fully considered this matter, including review of the papers filed by the parties, the authorities cited therein, and the arguments presented, the Court rules as follows:

## FACTUAL BACKGROUND

Defendants PAUL and ELLEN NELSON owned all title to the property in question from 1961 to November 1976. In 1972, defendant, FRITZ NACHANT CO., allegedly installed the piping and pumps for gasoline tanks at a service station on this land. This installation was done at the instruction of the NELSONS, who operated the gas station until 1975. In 1975, the NELSONS leased the gas station to STEPHEN and CLETUS KRAMER. Although the KRAMERS maintained their lease and operated the gasoline station pumps from May 1975 to March 1979, the property was transferred to MILDRED TACEY, who owned the property from November 1976 to April 1978, and then to JAY and NORMA GOODWIN, who owned the property from April 1978 to December 11, 1980. It was during the time of operation by the NELSONS and the KRAMERS that plaintiffs allege that large amounts of gasoline leaked into the soil and groundwater surrounding the tanks.

In 1980, plaintiffs SAMUEL and SARA ZANDS purchased the land from the GOODWINS. Plaintiffs allege that they were unaware of the gasoline leakage. They further allege that they were not in anyway responsible for the gasoline contamination, all of which allegedly occurred prior to their purchase of the property.

## CONCLUSIONS OF LAW

On July 1, 1991, plaintiffs filed the third amended complaint. Plaintiffs' federal jurisdiction in this third amended complaint is based on a claim under section 6972(a)(1)(B) of Title 42 of the United States Code. This section provides in part that "... any person may commence a civil action on his own behalf ... against any person ... who has contributed ... to the past ... handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment...." 42 U.S.C. § 6972(a)(1)(B) (1983 & Supp.1991).

### I.

### *The Notice and Delay Provision of Section 6972(b)(2)(B)*

■ The first argument presented for summary judgment in the Defendants' Motions was that plaintiffs failed to comply with the notice provisions of CERCLA and

RCRA. Indeed, these notice and delay requirements, when applicable, "are mandatory conditions precedent to commencing suit under the RCRA citizens suit provision; a district court may not disregard these requirements at its discretion." *Hallstrom v. Tillamook County*, 493 U.S. 20, 31, 110 S.Ct. 304, 311, 107 L.Ed.2d 237 (1989), *reh'g denied*, 493 U.S. 1037, 110 S.Ct. 761, 107 L.Ed.2d 777 (1990).

In determining whether plaintiffs complied with the notice and delay in the instant case, the Court first notes the unique procedural history of this case. Although the initial complaint was amended three times, the allegations and the causes of action in the third amended complaint are the only relevant allegations and causes of actions to the Court for purposes of these motions. *Cf. Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409–10 (3d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991) (court did not consider allegations against two defendants who had been left out of amended complaint).

■ Additionally, as complaints that have been amended are no longer before the Court, the Court will not examine whether notice and delay provisions were complied with for causes of action that have been omitted in the final amended complaint. As a result, it is not necessary for the Court to determine whether plaintiffs complied with the notice and delay provisions of CERCLA when they filed the initial complaint. Likewise, the Court need not consider whether the notice and delay provisions were complied with at the initial filing of the second complaint (also the filing of the second amended complaint). Instead, the Court need only determine whether the existing causes of action, those contained in the third amended complaint, comply with all notice and delay requirements.

The Court thus turns to the only cause of action contained in the third amended complaint that requires notice and delay: section 6972(a)(1)(B). Section 6972(b)(2)(A) provides that:

"No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice to (i) the Administrator; (ii) the State in which the alleged endangerment may occur; (iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section...."

42 U.S.C. § 6972(b)(2)(A) (1983 & Supp. 1991).

In determining when an action is "commenced" for purposes of RCRA notice and delay, defendants argue that the Court should look to the time of the initial filing. The Court construes this argument in two manners: (A) that an action is considered commenced for purposes of a notice and delay provision at the time of the initial filing of a complaint regardless of when causes of action are later introduced in subsequent amended complaints, and (B) that the notice and delay provision of RCRA requires a non-adversarial period, effectively tolling the delay period from the time of the initial filing.

## A. *When An Action Commences For Purposes of Notice And Delay*

Notably, this case does not present the more difficult situation where a claim is in the initial complaint, notice is given, and then the same claim is in the amended complaint. The facts here are simpler: (a) the section 6972(a)(1)(B) claim was not added until the third amended complaint, and (b) the other "notice and delay" claims that were in earlier complaints were left out of this final amended complaint.

■ The verb "commence" requires, at a minimum, that the section 6972(a)(1)(B) cause of action appear in the complaint. Regardless of whether an amended complaint restarts a cause of action or merely modifies an existing one, a cause of action cannot be commenced before it appears in

the pleading.[1] As a result, the Court holds that for purposes of a notice and delay provision relating to a new claim which appears for the first time in the pleadings in the amended complaint, the Court will look to the filing of the amended complaint to determine when the "action" is commenced. An alternative rule would require plaintiffs to give the ninety-day notice required for a section 6972(a)(1)(B) claim prior to filing a complaint that does not include a section 6972(a)(1)(B) claim. As plaintiffs cannot give notice for a claim before they even conceive of bringing the claim, the Court rejects such an option.

■ The procedural history clearly indicates that the "notice" was not sent out until June 26, 1990. As stated, the Court will not look to the initial filing date if the cause of action did not exist at that time. In this case, the section 6972(a)(1)(B) was not added to the complaint until the final amended complaint was filed on August 1, 1991. It is thus clear to the Court that the notice was given over a year prior to the "commencement" of the suit, and thus the notice fully complied with the ninety days required by the statute.[2]

### B. *Whether Section 6972(a)(1)(B) Requires a Non-adversarial Period*

Conceding for purposes of argument that the notice was in fact over one year in duration, defendants argue that the notice is still insufficient because the notice period was not non-adversarial. As the holding in *Hallstrom* does not state whether related litigation may proceed during the notice period, the Court examines this issue as one of first impression in this jurisdiction. In so doing, the Court is mindful that other jurisdictions that have addressed this issue have arrived at different results. *Compare Dague v. City of Burlington*, 935 F.2d 1343, 1351–52 (2d Cir.1991) (while rejecting the notice and delay provision entirely when the section 6972(a)(1)(B) claim was accompanied by a claim under section 6945 which does not require similar delay, the Court intimated that one of plaintiffs alternatives would be to proceed with the initial suit and amend the section 6972(a)(1)(B) claim after an adversarial notice period) *with Supporters To Oppose Pollution v. Heritage Group*, 760 F.Supp. 1338, 1340–42 (N.D.Ind.1991) (holding that ninety day non-adversarial period was a jurisdictional prerequisite to a section 6972(a)(1)(B) claim).

■ As always, the plain language of the statute must be followed. *Hallstrom*, 493 U.S. at 28, 110 S.Ct. at 309. Indeed, " '[a]bsent a clearly expressed legislative intention to the contrary,' the words of the statute are conclusive." *Id. (quoting Consumer Product Safety Comm'n v. GTE*

---

**1.** Section 6972(b)(2)(B) also uses the "No action may be commenced" language. This section, one of the primary reasons for the notice and delay provision, provides that no action may be commenced after the Administrator has become involved in the alleged endangerment. *See* 42 U.S.C. § 6972(b)(2)(B) (1983 & Supp.1991). Essentially, the Administrator must be given first chance to bring an action or work out some satisfactory settlement.

By its plain language, however, this section does not require that the Administrator take its action during or before the ninety day waiting period. If plaintiffs had not commenced their claim 150 days after giving notice, the Administrator could still intervene at that point and preclude a citizen suit.

The Court posits the following hypothetical: plaintiffs give ninety days notice; one hundred days later plaintiffs file a complaint that does not include the section 6972(a)(1)(B) cause of action; thirty days after plaintiffs file their complaint, the Administrator commences an action under 42 U.S.C. § 6973. Using defendants' defi-

nition of "commence," plaintiffs could add a section 6972(a)(1)(B) cause of action to the existing complaint and it would be deemed commenced only one hundred days after the notice, even though it did not appear in the pleadings until after the Administrator's suit. The Court, however, is of the view that Congressional intent is more fully recognized by holding that plaintiffs cannot add their section 6972(a)(1)(B) cause of action to the complaint after the Administrator's suit begins. Why? Because when plaintiffs add the cause of action, they "commence" an action, which violates section 6972(b)(2)(B).

**2.** The fact that the letter giving notice stated that plaintiffs would bring the suit in 60 days is irrelevant. Regardless of whether the threat is of suit in 90 days, 60 days, or even one week, 90 days notice is complied with when the time from "threat" of suit to the time suit is brought is at least 90 days.

*Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Here, the plain language of the statute does not mention or require a "non-adversarial" period. The question thus is whether the legislative intention justifies the creation of a non-adversarial period.

In explaining the notice and delay provision, *Hallstrom* stated that the notice and delay provision serves two Congressional purposes: (a) notice allows Government agencies to take the lead role in enforcing environmental regulations; and (b) notice gives the alleged violator an opportunity to voluntarily comply with RCRA regulations. *Hallstrom,* 493 U.S. at 29, 110 S.Ct. at 310 (*citing Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 382, 98 L.Ed.2d 306 (1987)).[3]

As to the first Congressional purpose, the presence or lack thereof of a non-adversarial requirement will not effect a government agency's decision to intervene in a suit. Under either scenario, the Government agencies involved will still have the full ninety days to determine whether or not to bring a government suit or to work out some other resolution.

As to the second Congressional purpose, the presence of pending litigation *may* impact alleged violators' willingness to voluntarily comply with RCRA. Indeed, the policy of providing an opportunity for voluntary compliance "would be frustrated if citizens could immediately bring suit without involving federal or state enforcement agencies." *Hallstrom,* 493 U.S. at 29, 110 S.Ct. at 310. However, it is not clear that suits on other matters, even if related to the same subject matter, would eliminate the opportunity for voluntary compliance. Indeed, alleged violators would still have the opportunity, and the incentive, to take measures to stop the commencement of the section 6972(a)(1)(B) action which has not yet been added to the lawsuit. Concededly, the adversarial posture may impact the parties' ability to "work together." The simple fact remains, however, that until the specific civil claim is brought, there remains an incentive to work out some settlement of the dispute.

Cognizant of the benefit associated with this second Congressional purpose, the Court holds that this benefit does not outweigh the consequences of a non-adversarial requirement, and certainly does not justify the creation of a new requirement that is not in the plain language of the statute. Specifically, the Court is mindful of problems that would arise with the strict adherence to a "non-adversarial" period that defendants suggest is required. In circumstances such as this one where the initial complaint did not include a section 6972(a)(1)(B) claim, plaintiffs would be required to choose between two alternatives: (i) to forego their section 6972(a)(1)(B) claim entirely in order to continue their present suit, or (ii) to stay their pending suit for a period of ninety days prior to commencing their section 6972(a)(1)(B) claim in a new or an amended complaint. Similarly, as in *Dague v. City of Burlington,* 935 F.2d 1343 (2d Cir.1991), plaintiffs might have a section 6972(a)(1)(B) claim in addition to another RCRA claim that does not require notice. *Id.* at 1349.[4] Again plaintiffs would have to forego the section

---

**3.** Notably, the Supreme Court did not cite to where in the legislative history of RCRA it found these Congressional purposes. Instead, it cited *Gwaltney* for these purposes. This citation is somewhat troublesome, however, in that *Gwaltney* did not address RCRA, but instead was a CERCLA case.

Moreover, although the Court will analyze both of these Congressional purposes, the Court is of the opinion that the first purpose—that of providing government agencies with the opportunity to intervene—is the primary purpose behind the notice and delay provision. Especially in situations such as this one, where the harm is

a past harm and voluntary compliance cannot be achieved (as it could have been in *Gwaltney*) by the mere cessation of current activity, the Court is of the opinion that the opportunity for voluntary compliance is more of a beneficial side effect of the notice and delay provision than a primary purpose.

**4.** In *Dague,* not only did the Second Circuit not require a non-adversarial period, but the Court held that no delay was required at all when the section 6972(a)(1)(B) claim accompanied a RCRA claim that did not have such a notice provision. *See Dague,* 935 F.2d at 1352.

6972(a)(1)(B) claim to proceed immediately or in the alternative be forced to wait to bring a claim that does not have a notice and delay provision. The Court does not believe that Congress intended that plaintiffs forego valid RCRA claims simply because they had alternative causes of action, nor does the Court believe that Congress intended that the notice and delay provision of section 6972(b)(2)(A) would impede plaintiffs' ability to bring claims that do not have notice and delay provisions.

The Court thus holds that while giving alleged violators an opportunity to voluntarily comply with RCRA regulations is a legitimate purpose for purposes of a notice and delay provision, this purpose in and of itself does not warrant the creation of a "non-adversarial" period that is not explicitly in the statute. This simply is not one of the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *See United States v. Ron Pair Enterprise, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (*quoting Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). As a result, the Court holds that section 6972(b)(2)(A) does not require that the notice be followed by a non-adversarial period.

### C. *Conclusion*

The Court holds that plaintiffs' one-year delay in bringing the 6972(a)(1)(B) action, even though there was not a non-adversarial period, satisfies the technical requirements of the notice and delay provision of section 6972(b)(2)(A).

### II.

### *The Disposal of a Solid Waste*

The Court next turns to the primary issue raised in Nachant's Motions for partial summary judgment: whether the leakage of gasoline from an underground storage tank can create a cause of action under section 6972(a)(1)(B). In addition to resolving this dispute as presented in Nachant's Motions, the resolution of this question will resolve the similar question presented in the Defendants' Motions.

As background, the Congressional findings provide that "disposal of solid waste and hazardous waste in or on the land without careful planning and management can present a danger to human health and the environment." 42 U.S.C. § 6901(b)(2) (1983 & Supp.1991). Moreover, the term "resource conservation" means in part the "reduction of amounts of solid waste that are generated." 42 U.S.C. § 6903(21) (1983 & Supp.1991). The statute thus appears designed to protect the environment from the dangers associated with solid waste.

Among RCRA's mechanisms for the control of solid waste are citizen suits. Indeed, the legislative intent appears to be to allow citizens to use the citizen suit provisions of RCRA to clean up sites where solid waste disposal may present an imminent and substantial endangerment. *See* Act effective Oct. 17, 1986, Pub.L. 99–499 pp. 3366–67.

The parties are in agreement that an action can proceed based solely on solid waste. They dispute, however, (1) whether a section 6972(a)(1)(B) claim could ever arise out of the leakage of petroleum and (2) whether the defendants' actions here in relation to the leakage of petroleum support a section 6972(a)(1)(B) claim.

Again, the first step in statutory interpretation is, of course, analysis of the language itself. Indeed, "the starting point in every case of statutory construction is 'the language employed by Congress.'" *CBS v. F.C.C.*, 453 U.S. 367, 377, 101 S.Ct. 2813, 2820, 69 L.Ed.2d 706 (1981) (*quoting Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979)).

### A. *The Statutory Language*

RCRA defines the term "solid waste" as "any ... discarded material." 42 U.S.C. § 6903(27) (1983 & Supp.1991). The statute does not define "discarded," but the word is addressed in the Code of Federal Regulations. 40 C.F.R. § 261.2(a)(2) defines "discarded material" as any material that is abandoned. 40 C.F.R. § 261.2(b)

states that materials are solid wastes if they are "abandoned" by being "disposed" of. And the statute defines the word "disposal," a word that is synonymous with "discarded," as the *leaking ... of any solid waste or hazardous waste into or on any land or water....*" 42 U.S.C. § 6903(3) (1983 & Supp.1991).

### B. *Analysis of the Statutory Language*

The Court concurs with Judge McDonald's observation that "the regulations are in fact dense, turgid, and circuitous." *See United States v. White,* 766 F.Supp. 873, 880 (E.D.Wash.1991). For example, a careful reading of the chain of definitions indicates that solid waste is defined as the leaking of any solid waste. Although this observation is of little assistance to the Court, the Court is persuaded by the statute's concern with discarded materials.

### 1. Section 6972(a)(1)(B) Claims May Be Based On the Leakage of Petroleum

#### a. *The Gasoline Contaminated Media is a Solid Waste*

■ Despite the previously-noted ambiguity in the circuitous definitions, it is clear that solid waste is defined very broadly. Indeed, solid waste is "any discarded material." As broad as this definition may be, clearly it would not include materials that still are useful products.

■ The fact, however, that a product may at one time in the past be useful is of no benefit to those trying to avoid this statute once the product's usefulness lapses. As a result, defendants may be correct in one sense when they argue that "gasoline" is excepted from this section because it is not a solid waste. Despite any negative effects on the environmental system, gasoline is a useful product. Indeed, in the present situation, the intention in placing the gasoline into the underground tank was that it would be subsequently taken out of the tank and sold.

It is equally clear, however, that gasoline is no longer a useful product after it leaks into, and contaminates, the soil. At this point, the gasoline cannot be re-used or recycled. As a result, it must be said that the gasoline has been abandoned via the leakage (even if unintentional) into the soil. Indeed, the Court is of the opinion that by including the word "leaking" in its definition of the word "disposed," the statute incorporates this change in usefulness.

Moreover, the Court finds it difficult to believe that Congress intended that soil and groundwater contaminated with gasoline would not be covered by RCRA simply because the contamination was caused by gasoline. Thus, the Court holds that an exception is not created for gasoline simply because in some circumstances it is a useful product.

#### b. *Section 6991*

■ Additionally, the Court is not persuaded by defendants' continued reliance on section 6991 of Title 42 as evidence that civil actions based on petroleum leakage cannot proceed under section 6972(a)(1)(B). Sections 6991 et seq. established a separate response program for underground storage tanks which leak various products, including petroleum. Defendants, relying primarily on language in the Ninth Circuit's opinion in *Wilshire Westwood Assoc. v. Atlantic Richfield,* 881 F.2d 801 (9th Cir. 1989), argue that no action can proceed under section 6972(a)(1)(B) related to underground petroleum storage tanks.[5]

---

5. Specifically, defense counsel cites the Ninth Circuit's reliance on the comments of Senator Durenberger, who introduced the legislation in 1984 (which included section 6991):

> Underground storage tanks are seldom regulated. At present, Federal regulation of storage tanks covers only above-ground tanks containing chemical wastes
>
> \*     \*     \*     \*     \*     \*
>
> There is legislative commentary that the **"tank storage of underground contaminants—gas-**

**oline—is unregulated because it is not a waste product** (and thus not under the authority of the Resource Conservation and Recovery Act), and spill of the fuel cannot be cleaned up under the Superfund authority because it is a petroleum product."

*Wilshire Westwood Assoc. v. Atlantic Richfield,* 881 F.2d 801, 807 (9th Cir.1989) (*citing* 130 Cong.Rec. S2028, S2080).

First, the legislative history accompanying section 6991 cannot be dispositive of Congressional intent with respect to section 6972(a)(1)(B) because it followed, rather than coincided with, the enactment of section 6972(a)(1)(B).

Second, "separate" does not mean "exclusive." Indeed, setting up a special system for underground tanks in section 6991 does not necessarily indicate that gasoline leaks could not be included within the rest of RCRA. An equally plausible alternative is that 6991 simply provides an additional means for dealing with this specific type of problem, and the Court is of the opinion that this is the case here. Indeed, section 6991 addresses underground storage tanks besides those used for gasoline. Taken to its illogical extreme, defendants argument would render individuals who store solid waste in underground storage tanks free from liability from citizen suits. As a result, the Court views section 6991 as a supplement to the remedies already available under section 6972(a)(1)(B).

Finally, defendants' reliance on *Wilshire Westwood Assoc. v. Atlantic Richfield*, 881 F.2d 801 (9th Cir.1989), is not persuasive to the Court because the issues involved in *Wilshire Westwood* did not involve RCRA, but instead addressed the issue of the petroleum exclusion in 42 U.S.C. § 9601(14) of CERCLA. Indeed, *Wilshire Westwood* held only that the specialized treatment of underground storage tanks in section 6991 (and in another section) are evidence that petroleum in underground storage tanks is not covered by *CERCLA*. The Court will not extend this reasoning to the Resource Conservation and Recovery Act because it is not convinced that the two statutes are meant to be similar on this issue. Primarily, whereas CERCLA has an explicit exclusion for petroleum, no such similar exclusion exists in RCRA.[6] The Court thus re-

fuses for this reason as well to create a petroleum exception for section 6972(a)(1)(B).

#### c. *EPA Memorandum*

Finally, the Court's conclusion that a private civil action can be maintained for gasoline leakage is supported by statements made by the Environmental Protection Agency. "The Final Revised Guidance Memorandum on the Use and Issuance of Administrative Orders Under Section 7003 of the Resource Conservation and Recovery Act"[7] states on page 8:

> Residues of a spill or a release of gasoline are not automatically listed as hazardous. Even so, gasoline leaking from underground tanks can be controlled under RCRA as a "solid waste."

The Court is not relying on this EPA Memorandum, and is aware of the disclaimer that accompanies the Memorandum, but finds this Memorandum simply to be further support for the conclusion that section 6972(a)(1)(B) does cover gasoline that leaks into soil.

#### 2. The Creation of Solid Waste Will Support a Section 6972(a)(1)(B) claim

Having concluded that there is no petroleum exception in section 6972(a)(1)(B), the Court turns to the second question of whether the defendants' actions will support a section 6972(a)(1)(B) claim. Despite the parties' emphasis on "the *disposal* of discarded materials" in their briefing of this matter, partly at the Court's request, it is evident from the plain language of the statute that a plaintiff can also prevail in a section 6972(a)(1)(B) claim by showing handling, storage, treatment or transportation of solid waste. Moreover, by referring to RCRA as a "cradle-to-grave regulatory regime,"[8] Congress expressed its intent that RCRA apply to: (1) those who create solid waste, (2) those who trans-

---

**6.** Similar to section 6972(a)(1)(B), CERCLA has a citizen suit provision at 42 U.S.C. § 9659. CERCLA, however, explicitly and specifically excludes petroleum from its list of "hazardous substances." *See* 42 U.S.C. § 9601(14). In contrast, RCRA does not include any petroleum exemption.

**7.** Section 7003 (42 U.S.C. § 6973 (1983 & Supp. 1991)) is the government's enforcement version of the citizen suit provisions contained in 42 U.S.C. § 6972.

**8.** *See* H.R.Rep. No. 1016, Part I, 96th Cong., 2d Sess. 17, *reprinted in* 1980 U.S.Code Cong. & Admin.News 6119, 6120.

port or handle it during its life, and (3) those who provide a final resting place for such waste.

■ Additionally, among those specifically included in the definition of "any persons" are "generators." *See* 42 U.S.C. § 6972(a)(1)(B) (1983 & Supp.1991). As a result, the Court is further persuaded that RCRA applies to individuals who do no more than create solid waste. The Court simply will not accept defendants' interpretation of the statute which would allow individuals to create solid waste, and avoid the requirements of RCRA by never making *any* attempt to clean up the mess. Clearly such a result is not what was intended by a statute that desires to reduce "the amounts of solid waste that are generated."

### C. *Conclusion*

The Court holds that there is not an exception for petroleum in section 6972(a)(1)(B). Additionally, without addressing the merits of the defendants' contention that solid waste was never "disposed" of, the Court holds that the mere creation of solid waste, and the subsequent abandonment of it in the ground, will support a cause of action under section 6972(a)(1)(B).

### III.

### *Contribution*

■ Nachant's Motions and Defendants' Motions also raise questions of whether the actions of each of the defendants satisfy the statutory requirement that the person be one who "contributed." To the extent that these motions ask the Court to make a factual determination that each or any of the defendants contributed to the disposal, the Court finds that these motions are premature. Consistent with representations made to the parties by Magistrate Judge Roger C. McKee, and consistent with the arguments made by defendants in response to plaintiffs' motion, the Court will only address legal issues of dispute. The parties will have the

opportunity to present factual issues to be resolved at a later motion date.

At this time, the Court will only address the question of whether, as a matter of law, each of the defendants could be a contributor under RCRA and on the facts alleged by plaintiffs. Again, the Court is given little guidance as the statute does not define the term "contributor." Where terms are not defined in the statute, courts are compelled to look to the "ordinary meaning" of the language in the statute. *Securities Industries Ass'n v. Board of Governors*, 468 U.S. 137, 149, 104 S.Ct. 2979, 2985, 82 L.Ed.2d 107 (1984). Random House defines "contribute to" as "to be an important factor in; help to cause." *The Random House Dictionary of the English Language*, 2d ed. unabridged (1987). Similar to the development of the principle of "proximate cause" in the law of torts, the Court is cognizant that there must be some limitations on the definition of contributor with respect to section 6972(a)(1)(B). For example, individuals who provided the materials for the underground storage tank to the installer are one step removed, as are the individuals who sold the land to the individuals who had the underground storage tanks installed. Under a broad reading of contribution, these individuals could be said to have "helped to cause" the leakage, just as the banks that made the loans did. This case, however, does not present such extreme examples. Here, the defendants are individuals who owned the land during which time the gasoline allegedly leaked, individuals who operated the pumps during which time the gasoline allegedly leaked, and individuals responsible for the installation of the piping and pumps for the gasoline tanks that allegedly leaked. None of these individuals are so far removed that it can be said that, as a matter of law, they did not contribute to the leakage. As a result, the Court holds that each of the defendants may be a contributor under the statute. As a result, the motion is denied.

It is possible, however, that one or more of the defendants will be able to show that they did not contribute, or in the alternative that the plaintiff contributed as well. Any motions based upon such factual con-

clusions should be presented to the Court for a hearing on January 21, 1992 at 10:30 a.m. For today, the Court holds that as a legal matter each of the defendants can be a contributor under section 6972(a)(1)(B).

## IV.

### *Plaintiffs' motion for partial summary judgment*

Just as the Court found that defendants' factual claims that they were not contributors were premature, the Court finds, without addressing the merits, that Plaintiffs' Motion is premature as well. Defendants are still conducting discovery on the site as to the cause or causes or the contamination. Although the Court is cognizant of plaintiff's desire to move this lawsuit along, consistent with representations made to the parties by Magistrate Judge McKee, this motion must be continued until the testing at the site is completed.

Defendants represented that the testing of the site was to be conducted during the week of October 21, 1991. As a result, Plaintiffs' Motion is continued until January 21, 1992 at 10:30 a.m. Based on new developments during the intervening time, parties may, if they choose, submit new papers to replace those already before the Court in a manner consistent with the Local Rules.

## CONCLUSION

The Court hereby denies the motions for summary judgment made by the defendants. Likewise, the Court denies defendant NACHANT's continued motion for partial summary judgment.

Additionally, the Court holds that this motion hearing was not intended to resolve factual disputes, and as a result it continues the plaintiffs' motion for summary judgment or summary adjudication of issues until January 21, 1992 at 10:30 a.m. Likewise, defendants shall file any motions that require the resolution of factual issues in accordance with the filing requirements for a January 21, 1992 motion date as well. In the event that any party chooses not to bring motions on January 21, 1992, or in the event that it is still premature to proceed with motions on factual issues on January 21, 1992, counsel shall notify the Court as soon as possible.

IT IS SO ORDERED.