**PAPER RECYCLING, INC., Plaintiff,**

v.

**AMOCO OIL COMPANY, Defendant.**

**No. 1:91–cv–3123–RHH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 23, 1993.

Order on Reconsideration Dec. 14, 1993.

W. Pitts Carr, David H. Pope, Carr Tabb & Pope, Atlanta, GA, David P. Darden, Smith Eubanks Smith & Darden, Marietta, GA, for Paper Recycling, Inc.

Sanford R. Karesh, Gary L. Seacrest, Jeffrey Paul Raasch, Bentley Karesh & Seacrest, Atlanta, GA, for Amoco Oil Co.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the Court on Amoco Oil Company's Motion for Partial Summary Judgment [36–1]. The Court DENIES the motion.

### BACKGROUND

Plaintiff Paper Recycling, Inc. ("PRI") owns and operates a paper recycling plant located on approximately 9 acres fronting the eastern right of way of Winters Chapel Road in Doraville, DeKalb County, Georgia. Defendant Amoco Oil Company ("Amoco") owns and operates a bulk fuel terminal which is located near PRI's property. According to Amoco, it first discovered a fuel leak in the petroleum pipeline along Winters Chapel Road somewhere around March 31, 1986. The exact location of the pipeline is unclear, with Amoco suggesting that it runs across PRI's property and PRI maintaining that the pipe runs just to the west of its property.

On or about April 7, 1986, R.D. Pickett, the manager of field distribution at the Amoco petroleum terminal, telephoned the assistant plant manager of PRI, Kenna Toomey, to request permission to clear an area to stack pipes to repair the diesel fuel leak. Amoco received permission to proceed with the repair work for the leak.

By April of 1986, the entire pipeline running on or adjacent to PRI's property was replaced and no further leaks occurred.

Around October 17, 1986, Kenna Toomey of PRI met with Ray Jarrett and R.D. Pickett of Amoco to discuss the placement of Amoco's equipment on the property of PRI to run recovery tests and Mr. Toomey expressed no objection to the proposed plans. Kenna Toomey chose the types of monitoring wells to be used, the location of the pumping station and executed an easement for the placement of a power pole to provide electrical power to the pumping station.

Around March 9, 1987, Toomey of PRI and Jarrett and Pickett of Amoco met with a geologist trained in environmental matters to discuss the specific location of recovery wells and recovery equipment that would be located on PRI's property to extract the petroleum product leaked. Mr. Toomey agreed to all of the proposals for the placement of the recovery wells and equipment. The first recovery well became operational on or about April 21, 1987.

The United States Environmental Protection Agency was notified of the pipeline leak. Jarrett of Amoco testified that the EPA was on the site, and monitored the excavation, the steps taken to replace the pipeline, and "approved of everything before we went back on-line with product." He further testified he was not aware of an administrative order issued by the EPA, or any formal proceeding by the EPA. Jarrett deposition, p. 37. The Environmental Protection Division of the State of Georgia issued a consent order on March 6, 1987. The consent order concerned the underground product recovery well system which was to recover the petroleum product leaked from the pipeline. The system would discharge treated, extracted ground water. The order allowed Amoco to bypass the permit requirement under the Georgia Water Quality Control Act, O.C.G.A. § 12–5–30(a).

Amoco removed this case to federal court on December 12, 1991. PRI's original complaint included claims for nuisance, trespass, strict liability, and negligence. In an Order dated April 10, 1992, the Court granted leave to amend the complaint. PRI added two counts to its complaint: fraud and breach of contract.

In an Order date December 7, 1992, the Court granted summary judgment to Amoco on PRI's negligence and strict liability claim. The Court granted in part and denied in part summary judgment on PRI's nuisance and trespass claims. The Court denied summary judgment on PRI's fraud claim. The Court also granted leave to amend the complaint to include a claim under the Resource Conservation and Recovery Act ("RCRA"), as amended, 42 U.S.C. § 6972(a)(1)(B).

Presently, Amoco moves for summary judgment on Plaintiff's RCRA claim.

## DISCUSSION

A. Standard of Review for Summary Judgment Motion

This Court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In cases such as this where the movant is the defendant, that party must demonstrate that the nonmoving party, the plaintiff, lacks evidence to support an essential element of her or his claim. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), cert. denied, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).[1] The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. However, it is not enough in most situations for the movant merely to point out to the court this absence of evidence. Id. 477 U.S. at 323, 106 S.Ct. at 2552; Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991). Rather, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)).

Only after the movant meets its initial burden does any obligation on the part of the nonmovant arise. Id.; Adickes v. S.H. Kress & Co., 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); Clark, 929 F.2d at 608. Nevertheless, once the movant has met this initial burden, the opposing party must present evidence establishing a material issue of fact. Celotex, 477 U.S. at 325, 106 S.Ct. at 2553. The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S.Ct. at 2553.

All evidence and factual inferences should be viewed in the light most favorable to the nonmoving party. Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir.1987); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir.1987). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." Id. at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. Id. at 248, 106 S.Ct. at 2510.

B. Application

The citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"), as amended, 42 U.S.C. § 6972(a)(1)(B), provides:

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(B) against any person, including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or dispos-

---

1. In contrast, where the movant is the plaintiff, that party must demonstrate the absence of an issue of material fact with regard to every element essential to his or her claim. See Id.

al facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may represent an imminent and substantial endangerment to health or the environment....

("citizen suit provision"). Defendant contends the citizen suit provision of RCRA does not apply to the case at hand, as the leakage of petroleum does not fall within the scope of the statute. Plaintiff argues the provision is applicable and cites to the case of *Zands v. Nelson*, 779 F.Supp. 1254 (S.D.Cal.1991) in support. In *Zands*, the court held that leaking gasoline was a solid waste under RCRA. The court further held that leakage of gasoline from an underground storage tank can create a cause of action under section 6972(a)(1)(B). The court reasoned that the "mere creation of solid waste, and the subsequent abandonment of it in the ground" will support a citizen suit claim under RCRA. *Id.* at 1264. Plaintiff also cites to the decision in *Pantry, Inc. v. Stop–N–Go Foods, Inc.*, 796 F.Supp. 1171 (S.D.Ind.1992), in which the court held that seller of convenience stores had disposed of waste in violation of a Kentucky environmental protection statute when petroleum leaked from underground storage tanks.

The Court has considered the opinions carefully and concludes they provide persuasive authority for Plaintiff's RCRA citizen suit against Defendant Amoco. The Court holds that leaking petroleum product constitutes "disposal" of "solid waste" which "may present an imminent and substantial endangerment to health or the environment" and which may form the basis for a claim under the citizen suit provision of RCRA. Defendant's arguments to the contrary are without merit. Defendant has failed to cite to any cases which hold that leakage of petroleum cannot form the basis for a citizen suit under RCRA, nor is the Court aware of any such decisions.

Moreover, Defendant's attempt to distinguish *Zands* and *Pantry* on the basis that it

has already begun remediation and clean-up efforts is without merit. First, it is undisputed that although Amoco began clean-up efforts approximately six years ago, free product remains on Plaintiff's property. Defendant insists that only 5,000 gallons of free-product remain on PRI's property. Defendant's Reply Brief, p. 19; Schmidt Deposition, p. 38. Plaintiff's expert puts the number at 18,000 to 21,000 gallons. Lotfi Deposition, pp. 21–29. In addition, there is nothing before the Court to suggest that Defendant has attempted to remediate the dissolved product found in the groundwater. Instead, Defendant gives two explanations for this failure: (1) the state of Georgia does not require remediation of groundwater under these circumstances; and (2) Defendant's remediation expert Gene Schmidt states that "there was no need to remove material that has dissolved in the groundwater, because it is below drinking water standards." Schmidt deposition, p. 58. With respect to soil contamination, Defendant again points to state law and argues Georgia law does not require soil remediation efforts in this instance. Assuming the Court accepts these explanations as true for the purposes of this motion only, they still do not rule out the possibility that an imminent and substantial endangerment to health or the environment currently exists as a result of the petroleum leakage. *Cf. Fishel v. Westinghouse Elec. Corp.*, 640 F.Supp. 442, 445–46 (M.D.Pa.1986) (With respect to a section 6972 claim, court holds the remedial actions taken by defendant in compliance with the government's order issued two years prior are not "determinative of whether an imminent and substantial endangerment currently exists"). In sum, although Amoco may not have been as reluctant to begin remediation efforts as were the defendants in *Zands* and *Pantry*, it is far from clear whether Defendant's remediation efforts, which were begun six years ago and still are not complete, have been all they should be in terms of federal, not state, law.[2]

Defendant appears to be arguing that nothing could be gained by allowing the

**2.** Defendant argues Plaintiff has not met its burden on summary judgment because it failed "to produce any evidence to indicate that [Amoco's] remedial efforts were insufficient to meet the standards under the NCP or RCRA." Reply

Brief, p. 14. Defendant seems to have forgotten who bears the initial burden on summary judgment. It is Defendant's burden to come forward with evidence which points to an absence of material fact as to whether its efforts were suffi-

RCRA claim to go forward (while at the same time admitting that it did not think RCRA applied, so it has not complied with the statute). On the contrary, much could possibly be gained—a cleaner and healthier environment, which was the purpose behind the enactment of RCRA.

It is true that a citizen suit may be barred under certain circumstances as provided in 42 U.S.C. § 6972(b)(2)(B) [3] and (C).[4] However, there is no evidence to suggest any of the circumstances are present in the case at hand.

In support of the argument that its remediation efforts bar the citizen suit, Amoco cites the case of *O'Leary v. Moyer's Landfill, Inc.*, 677 F.Supp. 807 (E.D.Pa.1988). The case is distinguishable, however, on the basis that in *O'Leary*, but not here, a Remedial Investigation and Feasibility Study had been prepared and a consent decree was issued by the Environmental Protection Agency. Here,

there is present no comparable action by the state or federal government. Neither the federal government nor the state government has acted to remedy the contamination of Plaintiff's property. The most that can be said is that the EPA monitored the replacement of the pipeline to ensure no further leakage; and that the Georgia Environmental Protection Division allowed Amoco to bypass a state statutory requirement concerning water discharge in order to facilitate the clean up.

In sum, the Court has considered Defendant's arguments in favor of granting summary judgment on Plaintiff's claim under RCRA. The Court finds them without merit and DENIES the motion.

## CONCLUSION

The Court DENIES the motion for partial summary judgment. Plaintiff's RCRA claim remains pending.

So ORDERED.

---

cient to meet the standards under the NCP or RCRA. *Only then* does the burden shift to Plaintiff. It is clear Defendant has failed to call the Court's attention to the specific requirements under RCRA and to offer evidence of compliance. Indeed, Defendant as much as admits that it has not complied with RCRA. However, even assuming that the so-called "substantial compliance" standard advanced by Defendant applied (instead of a total compliance standard), the Court is not convinced that Defendant has substantially complied with RCRA.

**3.** 42 U.S.C. § 6972(b)(2)(B) provides:

No action may be commenced under subsection (a)(1)(B) of this section if the Administrator, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment—
 (i) has commenced and is diligently prosecuting an action under section 6973 of this title or under section 106 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C. 9606];
 (ii) is actually engaging in a removal action under section 104 of the Comprehensive Environmental Response, Compensation and Liability act of 1980 [42 U.S.C.A. § 9604];
 (iii) has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604] and is diligently proceeding with a remedial action under that Act [42 U.S.C. § 9601 et seq.]; or

 (iv) has obtained a court order (including a consent decree) or issued an administrative order under section 106 of Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9606] or section 6973 of this title pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action.
In the case of an administrative order referred to in clause (iv), actions under subsection (a)(1)(B) of this section are prohibited only as to the scope and duration of the administrative order referred to in clause (iv).

**4.** 42 U.S.C. § 6972(b)(2)(C) provides:

No action may be commenced under subsection (a)(1)(B) of this section if the State, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment—
 (i) has commenced and is diligently prosecuting an action under subsection (a)(1)(B) of this section;
 (ii) is actually engaging in a removal action under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604]; or
 (iii) has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [42 U.S.C.A. § 9604] and is diligently proceeding with a remedial action under that Act [42 U.S.C.A. § 9601 et seq.].

## ORDER

This case is before the Court on Defendant's Motion for Reconsideration [42–1], and Defendant's Motion to Amend Order [42–2]. The Court: (1) GRANTS Defendant's Motion for Reconsideration of the Court's Order of August 23, 1993 [42–1], and AFFIRMS its earlier denial of Defendant's Motion for Summary Judgment on the issue of liability under the Resource Conservation and Recovery Act; and (2) DENIES Defendant's Motion to Amend [42–2].

## BACKGROUND

Plaintiff Paper Recycling, Inc. ("PRI") owns and operates a paper recycling plant located on approximately nine acres fronting the eastern right of way of Winters Chapel Road in Doraville, Dekalb County, Georgia. Defendant Amoco Oil Company ("Amoco") owns and operates a bulk fuel terminal which is located near PRI's property. According to Amoco, it first discovered a fuel leak in the petroleum pipeline along Winters Chapel Road somewhere in late March of 1986. The exact location of the pipeline is unclear, with Amoco suggesting that it runs just to the west of its property.

On April 7, 1986, R.D. Pickett, the manager of field distribution at the Amoco petroleum terminal, telephoned the assistant plant manager of PRI, Kenna Toomey, to request permission to clear an area to stack pipes to repair the diesel fuel leak. Amoco received permission to proceed with the repair work for the leak.

By April of 1986, the entire pipeline running on or adjacent to PRI's property was replaced and no further leaks occurred. Around October 17, 1986, Kenna Toomey of PRI met with Ray Jarrett and R.D. Pickett of Amoco to discuss the placement of Amoco's equipment on the property of PRI to run recovery tests. Toomey expressed no objection to the proposed plans. Toomey chose the types of monitoring wells to be used, the location of the pumping station and executed an easement for the placement of a power pole to provide electrical power to the pumping station.

Around March 9, 1987, Toomey of PRI and Jarrett and Pickett of Amoco met with a geologist trained in environmental matters to discuss the specific location of recovery wells and recovery equipment that would be located on PRI's property to extract the petroleum product leaked. Mr. Toomey agreed to all of the proposals for the placement of the recovery wells and equipment. The first recovery well became operational on April 21, 1987.

The United States Environmental Protection Agency was notified of the pipeline leak. Jarrett of Amoco testified that the EPA was on the site, and monitored the excavation, the steps taken to replace the pipeline, and "approved of everything before we went back on-line with product." He further testified that he was not aware of an administrative order issued by the EPA, or any formal proceeding by the EPA. Jarrett depo., p. 37.

The Environmental Protection Division of the State of Georgia issued a consent order on March 6, 1987. The consent order concerned the underground product recovery well system which was to recover the petroleum product leaked from the pipeline. The system would discharge treated, extracted ground water. The order allowed Amoco to bypass the permit requirement under the Georgia Water Quality Control Act, O.C.G.A. § 12–5–30(a).

PRI brought a complaint for nuisance, trespass, strict liability and negligence in the Superior Court of Fulton County. Amoco removed this case to federal court on December 12, 1991. In an Order dated April 10, 1992, the Court granted leave to amend the complaint. PRI added two counts to its complaint: fraud and breach of contract.

In its Order of December 7, 1992, the Court granted summary judgment to Amoco on PRI's negligence and strict liability claim. The Court granted in part and denied in part summary judgment on PRI's nuisance and trespass claims. The Court denied summary judgment on PRI's fraud claim. The Court also granted leave to amend the complaint to include a claim under the Resource Conservation and Recovery Act ("RCRA"), as amended, 42 U.S.C. § 6972(a)(1)(B).

In its Order of August 23, 1993, the Court denied Defendant's Motion for partial summary judgment on Plaintiff's claim under RCRA. In the Order the Court found that leaking petroleum product constitutes "disposal" of "solid waste" which "may present an imminent and substantial endangerment to health or the environment" and which may form the basis for a claim under the citizen suit provision of RCRA. Presently, Amoco moves the Court for reconsideration or amendment of the August 1993 Order.

## DISCUSSION

### I. Motion for Reconsideration

 A motion for reconsideration should be filed only when, after careful consideration, it is deemed "absolutely necessary" by the movant. Local Rule 220–6. Such a motion may not be employed as a vehicle to tender new legal theories or to introduce new evidence that could have been presented in conjunction with the previously filed motion or response. Rather, a motion for reconsideration serves that limited purpose of correcting manifest errors of law or fact, or in certain circumstances, calling newly discovered evidence to the Court's attention. Thus, the court is most willing to reconsider a prior ruling on an issue in the face of new Eleventh Circuit or Supreme Court authority. Additionally, the Court is willing to correct a legal or factual error where made despite a clear presentation of the issue by the party seeking reconsideration. Finally, the Court will consider a legal theory not previously presented upon a showing that the theory was unavailable to the movant at the time of the original filing. Defendant moved the Court to Reconsider its August 23, 1993 Order.

### II. Defendant's Motion for Reconsideration

Defendant brings this Motion for Reconsideration on the theory that the Court erred in holding that the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et seq., applied to the case at bar. After careful reconsideration of the arguments, the Court upholds its original findings.

 The objectives of Congress in promulgating RCRA are to regulate "the treatment, storage, transportation, and disposal or hazardous wastes which have adverse effects on health and the environment." 42 U.S.C. § 6902(4) (emphasis added). In order for the Court to determine that RCRA applies to the case at bar, the Court must conclude that leaked petroleum may be hazardous waste. As stated earlier, the Court has already concluded that leaked petroleum product is a "solid waste" which "may present an imminent and substantial endangerment to health or the environment." Order of the Court, August 23, 1993. Like the district court in Zands v. Nelson, 779 F.Supp. 1254 (S.D.Cal. 1991), this Court finds that leaked petroleum product may form the basis of a claim under the citizen suit of RCRA.

 An imminent and substantial endangerment to health or the environment requires only a showing that risk of threatened harm is present; it does not require a showing that actual harm will occur immediately. Dague v. City of Burlington, 935 F.2d 1343, 1356 (2d Cir.1991), rev'd in part, on other grounds, Burlington v. Dague, —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). In addition, an allegation of "substantial compliance" with the spirit and objectives of RCRA does not bar a citizens' suit under RCRA. The parties have estimated that 5,000 to 21,000 gallons of free product remain on the water table after six years of remediation. Clearly, there are genuine issues whether substantial compliance has taken place.

 Defendant argues that it is unfair to hold the application of RCRA to contamination which initially occurred in 1986. RCRA explicitly applies to "past or present actions that contributed to or are contributing to the disposal of any solid waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Questions persist concerning Amoco's investigation of the remaining contamination and remedial measures. Because the statute itself directs a citizen to past as well as present contamination, and because Defendant has consistently

misjudged the amount of time needed to rectify the situation, the Court finds that it would not be unfair or inequitable to recognize Defendant's actions as subject to RCRA. Accordingly, the Court GRANTS Defendant's Motion for Reconsideration, and AFFIRMS its earlier denial of Defendant's Motion for Summary Judgment on the issue of liability under the Resource Conservation and Recovery Act.

### III. *Defendant's Motion to Amend*

An order denying a motion for summary judgment is interlocutory and unappealable. *Madry v. Sorel,* 440 F.2d 1329, 1330 (5th Cir.1971). However, in limited instances and under special circumstances, an unappealable order may be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Before an interlocutory order may be certified for appeal, three conditions must be satisfied. First, the order must involve the controlling question of law. Second, there must exist substantial grounds for difference of opinion. Third, an immediate appeal from the order will possibly materially advance the ultimate termination of the litigation. *Lorentz v. Westinghouse Electric Corp.,* 472 F.Supp. 954, 956 (W.D.Pa.1979).

Defendant has failed to show that a reversal of the Court's order on the applicability of RCRA would materially advance the ultimate termination of the litigation. Discovery is completed, and Plaintiff presently has pending against Defendant other counts which would be unaffected by the dismissal of the RCRA count. Thus, even if PRI's RCRA claims against Amoco were dismissed, Plaintiff's other counts against Amoco would proceed to trial and would require much the same proof and about the same amount of time to present such proof. Accordingly, the Court DENIES Defendant's Motion to Amend.

### CONCLUSION

The Court: (1) GRANTS Defendant's Motion for Reconsideration of the Court's Order of August 23, 1993 [42–1], and AFFIRMS its earlier denial of Defendant's Motion for Summary Judgment on the issue of liability under the Resource Conservation and Recovery

Act; and (2) DENIES Defendant's Motion to Amend [42–2].

So ORDERED.