Kim WINSTON, Scott B. Winston, and Gary W. Winston, Co–Executors of the Estate of Hazel Wood Winston and the Estate of Hazel Wood Winston, Plaintiffs,

v.

SHELL OIL COMPANY, a Delaware Corporation; William Alexander; P.K.M. Corporation, an Illinois Corporation; and Charles D. MacDonald, Defendants.

No. 93–1296.

United States District Court, C.D. Illinois.

Aug. 18, 1994.

Robert M. Riffle and David G. Lubben, Keck Mahin & Cate, Peoria, IL, for plaintiffs.

Dianna Dentino Zimmerman, Peoria, IL, Frank Grenard, Jones Ware & Grenard, Chicago, IL, Thomas R. Davis, Miller Hall & Triggs; and Danny L. Schroeder, Jr., Littler Renner Howard & Wombach, Peoria, IL, for defendants.

Dianna Dentino Zimmerman, Peoria, IL, and Frank Grenard, Jones Ware & Grenard, Chicago, IL, for third-party plaintiff.

Roland N. Litterst, Covey & Litterst, Peoria, IL, and Henry E. Billingsley, II and William J. Muniak, Arter & Hadden, Cleveland, OH, for third-party defendant.

## ORDER

McDADE, District Judge.

Plaintiffs, the co-executors of the estate of Hazel Wood Winston, deceased, own property located at 4310 N. Knoxville Avenue, Peoria, Illinois. They have filed this action against Defendants: Shell Oil, William Alexander, P.K.M. Corporation ("P.K.M."), and Charles MacDonald, seeking monetary & equitable relief for environmental contamination to their property, pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, (commonly known as "RCRA"), and Illinois common law.

In Count I, Plaintiffs allege that P.K.M. and MacDonald are in violation of RCRA, 42 U.S.C. § 6972(a)(1)(A), for failing to comply with state regulations concerning underground storage tanks. In Count II, Plaintiffs allege that all Defendants are in violation of RCRA, § 6972(a)(1)(B), for contributing to the storage and handling of hazardous waste. In Count III, Plaintiffs allege breach of contract against P.K.M. for not remediating the gasoline contamination in the soil once it was discovered. In Count IV, Plaintiffs allege that P.K.M. and Shell were negligent in regards to the upkeep of the property. In Count V, Plaintiffs seek punitive damages alleging wilful and wanton conduct on the part of Shell and P.K.M. In Counts VI and VII, Plaintiffs seek a declaratory judgment and an award of attorney's fees pursuant to RCRA.

Before the Court is Magistrate Judge Robert J. Kauffman's Report and Recommendation [Doc. # 27] recommending that the Court deny Defendants' Motions to Dismiss [Doc. # 16, 17, 19]. Defendants have filed timely objections to the Magistrate's Recommendation. Accordingly, the Court has made a *de novo* review of the record and determined that Plaintiffs Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted.

## BACKGROUND

In ruling on a motion to dismiss, this Court must accept as true all well pleaded factual allegations in the Complaint and all reasonable inferences that may be drawn therefrom. *Mid America Title Co. v. Kirk,* 991 F.2d 417, 418 (7th Cir.1993); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1973) (allegations of the complaint should be construed favorably to the pleader). Therefore, the following facts from Plaintiffs' Amended Complaint are taken as true.

At all times relevant to this action up until her death, Winston owned a parcel of property located at 4310 N. Knoxville Avenue, in Peoria, Illinois. From 1953 until 1984, Winston leased this property to Defendant Shell Oil for the purposes of opening a gasoline filling station. In November of 1970, Shell sub-leased the property for six months to Defendant William Alexander. From November 1984 through the present, Defendant P.K.M. has leased the property directly from Hazel Winston and Plaintiffs. All Defendants who have occupied the land were involved in the operation of gasoline filling stations, and at no times pertinent to this

action did Winston or Plaintiffs occupy the property or operate a gasoline station on the property.

In 1970, Shell renovated the property replacing two steel underground storage tanks ("USTs") with 3 fiberglass USTs. In 1971, William Alexander detected gasoline in a nearby stream, and upon investigation, Shell discovered that two of the fiberglass tanks were leaking gasoline into the surrounding soil. After repairing the USTs, Shell covered the soil with concrete but did not remove any of the contaminated soil.

In 1991, P.K.M., with its President, Defendant Charles MacDonald, removed a large waste oil UST from the property.[1] When the UST was removed, safety officials detected the presence of gasoline contamination in the soil. P.K.M. then hired Environmental Science and Engineering, Inc. ("ESE") to test part of the property where the waste oil UST was located, but P.K.M. did not direct ESE to test the soil near the gasoline USTs. The test revealed high concentrations of common chemical constituents normally found in gasoline, which were in excess of those requiring remediation and clean up by the Illinois Environmental Protection Agency. After discovery of the contamination, P.K.M. and MacDonald failed to remove all of the contaminated soil, failed to test all areas of the property for contamination, and failed to notify Plaintiffs about the contaminated soil until June 15, 1992. Plaintiffs subsequently filed this action.

## ANALYSIS

Because Plaintiffs have alleged violations of a federal statute in their first two counts, this Court has original jurisdiction under 28 U.S.C. § 1331.[2] All Defendants have filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. This Court will dismiss the Complaint only if Plaintiffs cannot prove any set of facts to support their claim for relief. *Conley v. Gibson,* 355 U.S.

41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## I. COUNTS I AND II

In their first two counts, Plaintiffs have filed citizen suits pursuant to RCRA, § 6972(a). Title 42 U.S.C. § 6972(a) states in pertinent part:

### § 6972. Citizen Suits

(a) Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or

(B) against any person ... including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment;

\* \* \* \* \* \*

In the first count, Plaintiffs have filed a civil action against P.K.M. and MacDonald pursuant to § 6972(a)(1)(A). The second count was filed by Plaintiffs against all of the Defendants under § 6972(a)(1)(B).

In their motions to dismiss and objections to the Magistrate Judge's recommendation, Defendants argue that Plaintiffs are not entitled to bring a citizen suit for the leakage of gasoline from USTs. The first argument is that gasoline, i.e., petroleum, cannot be considered a solid or hazardous waste for purposes of a citizen suit under RCRA. Second, the Defendants argue that leakage from USTs is exclusively controlled by § 6991 *et seq.;* and, because the Administrator is the only person who can commence an action

---

1. The record does not reveal why P.K.M. was digging up the waste oil UST.

2. Title 28 U.S.C. § 1331 states that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

under § 6991, Plaintiffs are barred from filing a citizen suit.

The first issue is whether petroleum is a solid or hazardous waste. Defendants argue that similar to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), RCRA meant to exclude petroleum from the definition of hazardous waste.[3] Their argument proceeds in stages. In a seminal case interpreting CERCLA, *Wilshire Westwood Assoc. v. Atlantic Richfield,* 881 F.2d 801 (9th Cir.1989), the Ninth Circuit held that, although it is made up of hazardous substances such as xylene and benzene, petroleum is not a hazardous substance under CERCLA because the statute expressly excludes petroleum from its reach. *Id.* at 805. In this case, Defendants argue that, although RCRA (unlike CERCLA) does not specifically define hazardous waste as excluding petroleum products, it does specifically classify petroleum as a "regulated substance." Regulated substances are defined in § 6991(2) as:

(A) any substance defined in section 9601(14) of this title (but not including any substance regulated as a hazardous waste under subchapter III of this chapter)[4]; and

(B) petroleum.

Defendants thus conclude that by including petroleum in the definition of a regulated substance, while excluding hazardous wastes subject to CERCLA and subchapter III (previously denoted as "subchapter C"), Congress intended to exclude petroleum from the definition of hazardous waste under RCRA.[5]

Some courts, however, have found that even if petroleum is not a hazardous waste, citizen suits may still be brought because petroleum is a solid waste. In *Zands v. Nelson,* 779 F.Supp. 1254, 1261 (S.D.Cal. 1991), a district court found that a § 6972(a)(1)(B) claim can proceed solely on contamination by solid waste.[6] The court used a chain of definitions to hold that petroleum was a solid waste for purposes of RCRA. *Id.* at 1262. Starting the chain with the fact that solid waste is any discarded material, the court eventually found that material leaking onto land is enough to make that material a solid waste.[7] The court then found that petroleum leaking from USTs into or onto the land constituted solid waste and, therefore, a citizen could bring an action under § 6972(a)(1)(B). *Id.*

Taking both the *Zands* and the C.F.R.'s broad definitions of solid waste into consideration, it is plausible that petroleum could be seen as a solid waste for the purposes of RCRA. However, almost any material could be seen as a solid waste under these definitions. This Court, however, finds that, although petroleum could be considered a solid waste, Plaintiffs may not bring a citizen suit because petroleum USTs are exclusively regulated by subchapter IX of RCRA, and therefore cannot be classified as either hazardous or solid waste.

In *Edison Elec. Institute v. U.S. E.P.A.,* 2 F.3d 438 (D.C.Cir.1993), the D.C. Court of

---

**3.** Title 42 U.S.C. § 9601(14) states that the term "hazardous substance" "does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph."

**4.** Subchapter III of RCRA is made up of §§ 6921–6939e and is concerned with hazardous waste management.

**5.** RCRA Section 6991(2)(A)'s exclusion of hazardous substances defined in CERCLA § 9601(14) and regulated by subchapter III basically leaves only solid wastes defined in CERCLA subject to subchapter IX.

**6.** In *Zands,* 779 F.Supp. at 1262, the district court found that § 6991 (subchapter IX) does not bar civil actions under § 6972(a)(1)(B), providing

two reasons to support its decision. First, the legislative history is not dispositive because § 6991 was enacted later than § 6972. Second, § 6991 is only a supplement to the remedies already available under § 6972(a)(1)(B). Therefore, the court found that the remedies under subchapters IX and III overlap.

**7.** Title 40 C.F.R. § 261.2(a)(2) defines any discarded material as any material that is abandoned. Under 40 C.F.R. § 261.2(b), a material is abandoned if it is "disposed of." Title 42 U.S.C. § 6903(3) defines disposal as the "discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste into or on any land or water."

Appeals was confronted with the same question presented to this Court, namely, whether petroleum is a regulated or a hazardous substance. The Court of Appeals concluded that petroleum, although it could be defined as a hazardous substance under subchapter III, §§ 6921–6939e, is a "regulated substance" covered solely by subchapter IX. 42 U.S.C. § 6991(2)(B). The Circuit Court based its conclusion on the EPA's interpretation of these RCRA subchapters.

The EPA has found that because "subchapter III operates to define [but not regulate] petroleum as a hazardous waste,[8] ... the kickout provision of subchapter IX, § 6991(2)(A), does not apply to petroleum." *Id.* at 452. As previously noted, subchapter IX not only regulates petroleum, but also all solid and hazardous wastes covered by CERCLA, 42 U.S.C. § 9601(14), except for the hazardous substances regulated by subchapter III. The EPA has therefore concluded that if petroleum, expressly regulated by subchapter IX, could also be defined as a hazardous substance regulated under subchapter III, then subchapters III and IX would overlap. To avoid this overlap, the EPA has recommended that courts defer regulation of petroleum USTs to subchapter IX. In other words, under *Edison,* petroleum should be regulated solely under subchapter IX, even if it is also found to be a hazardous waste subject to subchapter III, until Congress sorts out the overlap. The *Edison* court found that the EPA's interpretation was a "permissible construction of the statute" and held that petroleum should be regulated under subchapter IX.[9]

This Court agrees with the decision in *Edison,* namely, that petroleum USTs are to be regulated solely by subchapter IX of RCRA. Although the EPA's reasoning is difficult to follow, it seems fairly clear from CERCLA, subchapter IX of RCRA and the CFRs that petroleum is not meant to be regulated as a hazardous or solid substance. CERCLA, which regulates hazardous and solid wastes, supports subchapter IX regulation of petroleum by expressly excluding petroleum from its coverage. *See* 42 U.S.C. § 9601(14). Subchapter IX expressly includes petroleum in its coverage of "regulated substances" and sets it apart from the hazardous and solid substances included within the scope of CERCLA, which are also to be classified as "regulated substances."[10] Finally, the Code of Federal Regulations ("CFR") demonstrates that Congress intended petroleum USTs to fall outside the scope of subchapter III regulation.

The Code of Federal Regulations dealing with underground storage tanks further establishes that the regulation of USTs in subchapter IX was meant to be exclusive from the regulation of hazardous waste in subchapter III. Title 40 C.F.R. § 280.10(b) states that the following UST systems are excluded from the requirements of this part:

> (1) any UST system holding hazardous wastes listed or identified under Subtitle III of the Solid Waste Disposal Act, or a mixture of such hazardous waste and other regulated substances.[11]

Although subchapter IX is meant to regulate USTs, it will not regulate USTs which contain hazardous waste as identified in subchapter III. This limitation of subchapter IX shows that subchapter III regulation is exclusive from subchapter IX regulation. Title 40 C.F.R. § 280.12 goes on to state that a hazardous substance UST system means:

> an underground storage tank system that contains a hazardous substance defined in section 101(14) of the Comprehensive Environmental Response, Compensation and

---

8. Subchapter III lists some hazardous wastes but does not mention petroleum. Thus, it is not clear why the EPA found that petroleum could be defined as a hazardous waste under subchapter III. Apparently, the fact that xylene and benzene, two of petroleum's components, are covered by subchapter III led the EPA (and the *Edison* court) to conclude that subchapter III might define, but not regulate petroleum as a hazardous substance subject to subchapter III regulation.

9. *See Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

10. In some cases, therefore, a plaintiff may bring an action under both CERCLA and RCRA.

11. As listed in the U.S.C.A. General Index the text for the Solid Waste Disposal Act and RCRA are both 42 U.S.C. § 6901, *et seq.*

Liability Act of 1980 (but not including any substance regulated as a hazardous waste under subtitle III) or any mixture of such substances and petroleum, and which is not a petroleum UST system.

These CFR definitions demonstrate that subchapter III is meant to regulate only hazardous waste USTs. Petroleum USTs are expressly excluded from subchapter III's coverage. Accordingly, this Court finds that regulation of petroleum USTs is only available under subchapter IX of RCRA, even though petroleum could be considered both a hazardous and a regulated substance. Therefore, since the contamination alleged flowed from a petroleum UST holding gasoline, the Court finds that the regulation and relief for the contamination in this case is solely within the ambit of §§ 6991–6991i (subchapter IX).

 Section 6991e contains federal enforcement for subchapter IX.[12] This section contains the only relief available against violators of the subchapter. The Administrator is given the power to bring suit in both § 6991e of subchapter IX and § 6973(a). However, there is no section in subchapter IX which allows citizen suits similar to those allowed by § 6972. Therefore, the Administrator is the only party allowed to bring suit for Defendants' violations of §§ 6991–6991i. For the above reasons, Plaintiffs' first two counts based on RCRA must be dismissed because Plaintiffs are not entitled to bring suit against the Defendants for violations of subchapter IX of RCRA.

## II. COUNTS III–VII

Counts three through seven (3–7) in Plaintiffs' Amended Complaint lay out a variety of supplemental state claims together with a count asking for attorney's fees. Because the two counts brought under RCRA have

been dismissed, the remaining counts also will be dismissed for lack of subject matter jurisdiction.[13] This Court was given original jurisdiction of Plaintiffs' claim pursuant to 28 U.S.C. § 1331 because the RCRA claims arose "under the Constitution, laws, or treaties of the United States." When the RCRA claims are dismissed, this court no longer has original jurisdiction over this action and, therefore, under § 1367(c)(3) the supplemental state claims will also have to be dismissed.

IT IS THEREFORE ORDERED that the Defendants' motions to dismiss counts I, II, III, IV, V, VI, and VII are hereby **GRANTED,** and the Magistrate's Report and Recommendation is **REJECTED.**

---

**12.** Section 6991e states:

(1) Except as provided in paragraph (2), whenever on the basis of any information, the Administrator determines that any person is in violation of any requirement of this subchapter, the Administrator may issue an order requiring compliance within a reasonable specified time period or the Administrator may commence a civil action in the United States district court in which the violation occurred

for appropriate relief, including a temporary or permanent injunction.

**13.** Title 28 U.S.C. § 1367(c) states in pertinent part:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
(3) the district court has dismissed all claims over which it has jurisdiction.