AGRICULTURAL EXCESS AND SUR-
PLUS INSURANCE COMPANY, an Illi-
nois Corporation and Delta Sonic Auto-
matic Car Wash Systems, a New York
Corporation, Plaintiff,

v.

A.B.D. TANK & PUMP CO., an Illinois
Corporation, and Xerxes Corporation,
a Delaware Corporation, Defendants.

No. 94 C 2854.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 16, 1995.

Daniel Charles Murray, Frederick S. Mueller, William J. Anaya, Robert Walter York, Johnson & Bell, Ltd., Chicago, IL, for Agricultural Excess & Surplus Ins. Co.

Glenn Charles Sechen, Jerome Wiener, Brian M. Fornek, Schain, Firsel & Burney, Ltd., Chicago, IL, Daniel Charles Murray, Frederick S. Mueller, William J. Anaya, Robert Walter York, Johnson & Bell, Ltd., Chicago, IL, for Delta Sonic Automatic Car Wash Systems.

Donald F. Hemmesch, Jr., Timothy David Nimrod, Taslitz, Smith & Hemmesch, Chicago, IL, for A.B.D. Tank & Pump Co.

Neil Kevin Quinn, Michael Gerard Bruton, Mark Peter Standa, Pretzel & Stouffer, Chtd., Chicago, IL, for Xerxes Corp.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Before the Court are Defendant A.B.D. Tank & Pump Company's and Defendant Xerxes Corporation's Motions to Dismiss Plaintiff Agricultural Excess and Surplus Insurance Company's and Delta Sonic Automatic Car Wash Systems' Amended Complaint.

### ALLEGED FACTS

Plaintiffs Agricultural Excess and Surplus and Insurance Company ("AESIC") and Delta Sonic Automatic Car Wash Systems ("Delta Sonic") have brought a fourteen count complaint against Defendant A.B.D. Tank & Pump Company ("ABD Tank") and Defendant Xerxes Corporation ("Xerxes") based on the leakage of an underground storage tank at Delta Sonic's retail operation located at 600 West North Avenue, Elmhurst, Illinois.

AESIC and Delta Sonic allege that in or about August, 1984, Delta Sonic entered into an agreement with ABD Tank to purchase an underground storage tank for the purpose of holding petroleum products and dispensing the same for retail sale at Delta Sonic's retail operation located at 600 West North Avenue, Elmhurst, Illinois. (Amended Complaint at ¶ 11.) The tank was to be deigned and manufactured by Xerxes and installed by ABD Tank. *Id.*

Sometime after Xerxes delivered and ABD Tank installed the underground storage tank and underground storage tank system, AESIC and Delta Sonic determined that the underground storage tank and the underground storage tank system leaked causing petroleum to escape into the soil and groundwater both at the site and on adjacent property *Id.* at ¶ 17. AESIC and Delta Sonic allege that they have incurred great expense determining the cause and extent of the damage and remedying the damage. *Id.* at ¶ 18. According to AESIC and Delta Sonic, all of

the damage incurred was caused by ABD Tank's intentional or negligent acts or omissions and its failure to perform in a workmanlike manner and by Xerxes' intentional or negligent acts or omissions and its material breach of its agreement including its express and implied warranties. *Id.* at ¶¶ 19–20. (The First Amended Complaint does not describe in detail the cause of the leaks.) Pursuant to a Commercial General Liability Insurance Policy, AESIC is obligated to indemnify Delta Sonic for certain costs and expenses incurred because of petroleum leaks.

AESIC and Delta Sonic bring Count I of their Amended Complaint pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992k, alleging that the conditions caused by the leaking underground storage tank "may present an imminent and substantial endangerment to health or the environment" because petroleum products have migrated through the soil and into the groundwater at the site and through the soil and into the groundwater of adjacent properties. (Amended Complaint Count I at ¶ 21.) As a result of the leakage, petroleum products allegedly remain in the soil and groundwater and continue to migrate beyond the site. *Id.* at ¶ 24. According to the Amended Complaint, ABD Tank and Xerxes have improperly disposed of a solid or hazardous waste in violation of the RCRA, and thus AESIC and Delta Sonic assert that they are entitled to a preliminary and permanent injunction requiring ABD Tank and Xerxes to undertake all necessary actions to address and abate the petroleum contamination at the site, *see* 42 U.S.C. § 6972(a). *Id.* at ¶ 26, Prayer for Relief (A). The remaining counts are based on the following state law theories, contractual subrogation (Count II), breach of contract (Count III), breach of warranty (Counts IV and V), negligence (Counts VI and VII), breach of third party beneficiary contract (Count VIII), strict liability—ultra hazardous activities (Count IX), strict liability—products liability (Count X), nuisance (Count XI), continuing private nuisance (Count XII), continuing trespass (Count XIII) and equitable indemnity (Count XIV).

ABD Tank and Xerxes have filed separate motions to dismiss the Amended Complaint. ABD Tank, in its Motion to Dismiss, offers two reasons why this Court should dismiss the Amended Complaint. First, ABD Tank argues that § 6972(a) of the RCRA does not provide for a private cause of action to compel the remediation of soil and ground water contamination emanating from leaking petroleum underground storage tanks. Second, ABD Tank argues that, even if § 6972(a) does provide a private cause of action to compel the remediation of soil and ground water contamination caused by leaking petroleum, AESIC and Delta Sonic cannot state a claim under § 6972(a) as they have not alleged a substantial and imminent damage to public health or the environment.

Xerxes offers three reasons why this Court should dismiss the Amended Complaint. First, Xerxes asserts that, as a manufacturer or supplier of the underground storage tank, it has not contributed to the handling, storage, treatment or disposal of waste, and thus it is not subject to liability under § 6972(a) of the RCRA. Second, Xerxes claims that, even if a manufacturer of an underground storage tank is subject to liability, AESIC and Delta Sonic cannot hold Xerxes liable because AESIC and Delta Sonic did not notify Xerxes of the suit ninety (90) days prior to filing its Amended Complaint, *see* 42 U.S.C. § 6972(b)(2)(A). Finally, as to the remaining state claims, Xerxes argues that, if this Court dismisses Count I, it should decline to exercise pendant jurisdiction over the remaining state claims and if this Court does not dismiss Count I, it should nevertheless dismiss the remaining state claims for failure to state a claim on which relief may be granted.

The Court addresses ABD Tank's and Xerxes' arguments in support of their motions to dismiss below.

## ANALYSIS

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must view all of the facts alleged in the complaint, as well as any inferences reasonably drawn from them, in the light most favorable to the plaintiff. *Caldwell v. City of Elwood, Ind.,* 959 F.2d 670, 671 (7th Cir.1992), citing *Mosley v. Klincar,*

947 F.2d 1338, 1339 (7th Cir.1991). A court should only dismiss a claim if it appears beyond a doubt that the plaintiff cannot establish any set of facts which would entitle him to the relief requested. *Id.* at 671–672.

*ABD Tank's Motion to Dismiss*

### a. Private Right of Action

■ As noted above, ABD Tank asserts that the Court should dismiss Count I of the Amended Complaint because § 6972(a) of the RCRA does not provide for a private right of action to compel the remediation of soil and groundwater contamination from leaking petroleum underground storage tanks. RCRA § 6972(a) states in relevant part:

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter; or

(B) against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a).

At least two courts have provided different answers to the question of whether § 6972(a)

applies to leaking petroleum underground storage tanks. In *Dominick's Finer Foods, Inc. v. Amoco Oil Company and Shell Oil Company,* No. 93 C 4210, 1993 WL 524808 * 2 (N.D.Ill. December 15, 1993), the court held that the plaintiff could bring a claim for injunctive and declaratory relief under § 6972 of the RCRA for contamination caused by petroleum leaks from defendant's underground storage tanks. In arriving at its conclusion, the *Dominick's* court noted that, under § 6972(a)(1)(B), a person may bring a cause of action based on the disposal of a solid waste that presents a substantial danger to the health or environment. 42 U.S.C. § 6972(a)(1)(B). The contested issue which the *Dominick's* court had to address was whether gasoline or petroleum from an underground tank constituted either a "hazardous or solid waste." *Id.* at * 2.

The *Dominick's* court concluded that leaked petroleum from an underground storage tank constitutes a "solid waste." *Id.* Following the reasoning of *Zands v. Nelson,* 779 F.Supp. 1254, 1261–64 (S.D.Cal.1991), the *Dominick's* court noted that the RCRA's definition of "solid waste" includes discarded liquid from commercial operations, *see* 42 U.S.C. § 6903(3).[1] In *Zands,* the court observed that, even though the RCRA does not define "discarded," the statute does define "disposal"—a word synonymous with "discarded"—as the "leaking ... of any solid waste or hazardous waste into or on any land or water...." 779 F.Supp. at 1262 (citing 42 U..C. § 6903(3)). Moreover, the Code of Federal Regulations defines "discarded material" as any material that is abandoned, *see* 40 C.F.R. § 261.2(a)(2), and explains that materials are solid wastes if they are "abandoned" by being "disposed" of. *Zands,* 779 F.Supp. at 1262 (citing 40 C.F.R. §§ 261.2(a)(2) and (b)).

Although the RCRA and the regulations define "solid waste"—"any discarded material"—broadly, the *Zands* court did recognize that the definition of "solid waste" would not

---

**1.** The RCRA defines "solid waste" as

"any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting

from industrial, commercial, mining and agricultural operations and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows ..."
42 U.S.C. § 6903(27).

include material which is still useful. 779 F.Supp. at 1262. In fact, the *Zands* court opined that Congress intended the RCRA to take into account the transformation of a product from useful to useless by including the word "leaking" in its definition of the word "disposed." *Id.* While gasoline is clearly a useful material when it is deposited into an underground storage tank and dispensed through pumps for sale, gasoline is no longer useful once it seeps into the soil and groundwater. *Id.* Based on *Zands*'s analysis of the RCRA's statutory language and the definitions in the Code of Federal Regulations, the *Dominick's* court found that "once gasoline leaked into the soil, the gasoline itself was no longer a useful material and instead became abandoned or discarded material." 1993 WL 524808 at * 2. This Court finds the reasoning of the *Zands* and *Dominick's* courts persuasive and agrees that leaked gasoline from an underground storage tank is no longer useful and is appropriately defined as discarded material or solid waste. In all likelihood, Congress did not intend that soil and groundwater contaminated by gasoline should escape the RCRA's coverage simply because the contamination was caused by a product which was at one time useful.

In addition to concluding that the statutory language of the RCRA, supplemented by the definitions in the Code of Federal Regulations, included leaking petroleum from underground storage tanks within the definition of solid waste, both the *Zands* and *Dominick's* courts rejected the argument that Subchapter IX of the RCRA, 42 U.S.C. §§ 6991–6991i, regulates underground storage tanks and is the exclusive remedy for petroleum leaks from underground storage tanks. 779 F.Supp. at 1262–63; 1993 WL 524808 at * 3. Both *Zands* and *Dominick's* determined that, even if the regulation of underground storage tank petroleum waste was governed by Subchapter IX, Subchapter IX does not foreclose a private action brought pursuant to § 6972(a)(1)(B) regarding a leaking storage tank. *Id.*

In *Winston v. Shell Oil Co.*, 861 F.Supp. 713, 716 (C.D.Ill.1994), the court agreed with the court in *Zands* that, taking the C.F.R.'s broad definition of solid waste into account, petroleum which leaked from an underground storage tank could be defined as a solid waste. However, the *Winston* court rejected the *Zands* court's determination that Subchapter IX merely provides an additional, as opposed to exclusive, means for addressing problems with underground storage tanks. *Id.* at 716–17. In holding that plaintiffs may not bring a citizen suit because petroleum underground storage tanks are exclusively regulated by Subchapter IX and Subchapter IX does not provide for citizen suits, *Winston* relied on *Edison Elec. Institute v. U.S.E.P.A.*, 2 F.3d 438 (D.C.Cir.1993). 861 F.Supp. at 717.

In *Edison*, the court held that the Environmental Protection Agency's ("EPA") decision to defer regulation of underground storage tank waste did not violate RCRA's statutory mandate to establish rules identifying hazardous waste and then to subject such hazardous waste to regulation. 2 F.3d at 452–53. The *Edison* court noted that the EPA reasonably determined that regulation of petroleum leakage from underground storage tanks under Subchapter III would overlap with the regulatory scheme for underground storage tanks under Subchapter IX creating administrative confusion and duplication of efforts, and thus upheld the EPA's decision to defer regulation of petroleum leakage from underground storage tanks under Subchapter III until the EPA worked out the overlap. *Id.*

In determining that regulation of leaked petroleum from underground storage tanks under Subchapter IX would overlap with regulation under Subchapter III, the EPA noted that Subchapter IX § 6991(2) defines "regulated substance" as

(A) any substance defined in section 9601(14) of this title (but not including any substance regulated as a hazardous waste under Subchapter III of this chapter), and

(B) petroleum

42 U.S.C. § 6991(2).[2] 2 F.3d at 452. The EPA found that the language of § 6991(2)(A)

---

**2.** Section 9601(14) lists those substances regulated under the Comprehensive Environmental Response, Compensation and Liability Act and ex-

ensures that, apart from petroleum, the substances regulated under Subchapters III and IX would not overlap. *Id.* Once a substance is defined as a hazardous substance under Subchapter III, it is no longer regulated under Subchapter IX falling instead into the domain of Subchapter III. *Id.*

However, the EPA recognized that a problem arises because Subchapter III defines petroleum as a hazardous waste and yet the kickout provision of § 6991(2)(A) does not apply to petroleum.[3] *Id.* The EPA contended, and the *Edison* court agreed, that the appropriate solution to this problem was to leave regulation of petroleum waste to Subchapter IX to avoid duplication of regulation efforts under Subchapters III and IX. *Edison,* 2 F.3d at 452. Thus, the *Edison* court permitted the EPA to temporarily defer regulating petroleum waste under Subchapter III until it sorted out the overlap between Subchapter III and Subchapter IX with regard to the regulation of petroleum leakage from underground storage tanks. *Id.* at 452–53.

■ Based on the reasoning of *Edison,* the *Winston* court concluded that petroleum underground storage tanks should be regulated only under Subchapter IX. 861 F.Supp. at 717. While this Court agrees with *Winston* that petroleum leakage from underground storage tanks should be regulated under Subchapter IX, not Subchapter III, this Court does not conclude that regulation of petroleum leakage from underground storage tanks under Subchapter IX prohibits civil enforcement suits under Subchapter VII.

Subchapter VII § 6972(a) allows a private citizen to bring a civil suit against anyone "who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a). Because § 6972(a) allows a private citizen to bring a civil enforcement suit against anyone who is contributing to the disposal of any *solid or hazardous waste,* this Court finds, contrary to the holding in *Winston,* that the *Edison* court's reasoning does not require this Court to conclude that Subchapter IX of the RCRA precludes private civil enforcement suits. The *Edison* court's conclusion that petroleum leakage from underground storage should be regulated under Subchapter IX, not Subchapter III, (even though petroleum waste might be defined as a hazardous waste under Subchapter III) does not mean that a private citizen cannot bring a civil enforcement suit, pursuant to Subchapter VII, against someone who is contributing to the disposal of petroleum—defined as a solid waste.

The *Winston* court notes that Subchapter IX defines petroleum as a "regulated substance," *see* 42 U.S.C. § 6991(2)(B), separate and apart from all other "regulated substances" which are defined as "any substance defined in section 9601(14) of this title (but not including any substance regulated as a hazardous waste under subchapter III of this chapter)." 861 F.Supp. at 717. The *Winston* court notes further that § 9601(14) of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") defines "hazardous substance" to ex-

pressly excludes petroleum. 42 U.S.C. § 9601(14).

**3.** It is not clear why the EPA determined and the *Edison* court agreed that petroleum could be defined as a hazardous substance under Subchapter I. Subchapter I defines "hazardous waste" as

(5) a solid waste, or combination of solid wastes, which because of its quantity, concentration or physical, chemical or infectious characteristics may

(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible illness; or
(B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed. 42 U.S.C. § 6903(5). However, the EPA may have concluded that, as petroleum is composed of xylene and benzene, both of which are covered

clude petroleum.[4] From CERCLA's definition of "hazardous substance," which explicitly excludes petroleum, the *Winston* court concludes that petroleum is neither a hazardous or solid waste under RCRA, and thus a private civil enforcement suit is not available under § 6972(a). *Id.*

Contrary to the *Winston* court's reasoning, this Court agrees with *Zands* that CERCLA's exclusion of petroleum from the definition of "hazardous substance" does not mean that RCRA excludes petroleum from its definition of hazardous or solid waste. RCRA, unlike CERCLA, does not explicitly exclude "petroleum" from its definition of hazardous waste or more importantly from its definition of solid waste. Again, this Court notes that, even if *Edison* counsels that petroleum leakage from underground storage tanks should not be defined as a hazardous waste regulated under Subchapter III, *Edison* does not prevent an individual from bringing a civil enforcement action, pursuant to Subchapter VII, to enjoin further contamination from petroleum leakage from underground storage tanks where such leakage is defined as a solid waste. Thus, this Court refuses to bar civil enforcement suits under RCRA § 6972(a) for petroleum leakage from underground storage tanks simply because CERCLA excludes petroleum from its coverage.

As the *Zands* and *Dominick's* courts noted, even given *Edison's* direction that petroleum leakage from underground storage tanks should be regulated under Subchapter IX, no section of Subchapter IX prohibits civil enforcement suits. Subchapter IX does permit the Administrator of the Environmental Protection Agency to issue orders requiring compliance with Subchapter IX and to bring a civil action to enforce such orders.

*Dominick's,* 1993 WL 524808 at * 3 (citing 42 U.S.C. § 6991e(a)(1)). Subchapter IX also allows states to impose and enforce more stringent regulations. 1993 WL 524808 at * 3 (citing 42 U.S.C. § 6991g). However, Subchapter IX contains no provision establishing that Subchapter IX is the exclusive remedy for leaks from underground storage tanks. 1993 WL 524808 at * 3. Moreover, Subchapter VII § 6972 expressly recognizes that federal and state governments have enforcement authority and precludes a private civil enforcement action where the Administrator or the State has initiated certain actions. *See* 42 U.S.C. § 6972(b)(2)(B) and (b)(2)(C). Thus, this Court agrees with the *Zands* and *Dominick's* courts that Subchapter IX merely provides additional, not exclusive, means for addressing problems with underground storage tanks. Civil enforcement suits brought pursuant to Subchapter VII § 6972(a) would merely supplement the federal enforcement provisions of Subchapter IX. Because this Court concludes petroleum leakage from an underground storage tank can be defined as disposed solid waste and regulation of underground storage tanks under Subchapter IX does not preclude a civil enforcement action under Subchapter VII § 6972(a)(1)(B), this Court denies ABD Tank's Motion to Dismiss Count I of the Amended Complaint on the basis that civil enforcement actions are not available for petroleum leakage from underground storage tanks.

**b. Imminent and Substantial Endangerment to Health or the Environment**

Even if § 6972(a) does provide a private cause of action to compel the remediation of soil and ground contamination caused by

by Subchapter III, Subchapter III defines petroleum as a "hazardous substance."

4. CERCLA § 9601(14) defines "hazardous substance" as follows:

(A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921], (D) any toxic air pollu-

tant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15. The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F).

42 U.S.C. § 9601(14).

leaking petroleum, ABD Tank argues that AESIC and Delta Sonic cannot state a claim under § 6972(a) as they have not alleged a substantial and imminent damage to public health or the environment. Contrary to ABD Tank's argument, paragraph 22 of Count I of the Amended Complaint alleges that "[t]he conditions caused by the leaking UST at the Site may present an imminent and substantial endangerment to health or the environment as these terms are defined and described in the [RCRA] ... in that leaked petroleum products from the UST or UST systems have migrated through the soil and into the groundwater at the Site and onto and through the soil and groundwater at adjacent properties." (Amended Complaint at ¶ 21.)

■ Despite paragraph 22, ABD Tank focuses on paragraphs 18, 28 and 29 of the Amended Complaint which suggest that the escaping petroleum products have cost AESIC $180,222.00 in remedial expenses, $275,765.80 in property damage and $50,000.00 in related expenses and Delta Sonic over $50,000.00 (the amount of its deductible, plus non-covered expenses). According to ABD Tank such paragraphs suggest that AESIC and Delta Sonic brought this action to recoup monies expended for remediation of contamination at the site, and thus no imminent or substantial threat or endangerment to health or the environment exists. Because § 6972(a) does not permit a private citizen to bring a civil enforcement act for damages, ABD Tank argues that this Court should dismiss Count I of the Amended Complaint.

RCRA § 6972(a) states in relevant part, The district court shall have the jurisdiction ... to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste referred to in paragraph (1)(B), [and] to order such person to take such other action as may be necessary ...

42 U.S.C. § 6972(a). In *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 57 n. 2, 108 S.Ct. 376, 381, 98 L.Ed.2d 306 (1987), the Supreme Court specifically mentioned the RCRA as an example of an environmental statute that authorizes only prospective relief. Moreover, subsequent cases have specifically held that, while injunctive relief is available under § 6972(a)(1)(B), the statute does not provide a private action for damages. *Kaufman and Broad–South Bay v. Unisys Corp.,* 822 F.Supp. 1468, 1476–77 (N.D.Cal.1993); *Commerce Holding Co. v. Buckstone,* 749 F.Supp. 441, 445 (E.D.N.Y.1990).

■ Thus, the Court agrees with ABD Tank that AESIC and Delta Sonic cannot bring an action under § 6972(a)(1)(B) to recoup past remediation expenses. However, a close look at the allegations in the Amended Complaint suggest that, while the state law claims, which include paragraphs 28 and 29, may seek to recover remediation expenses, Count I prays for a preliminary and permanent injunction which orders ABD Tank and Xerxes to address the problem of petroleum in the soil and groundwater at the site and to prevent continuing migration of petroleum into the soil and groundwater beyond the site. (Amended Complaint at ¶ 24, Prayer for Relief A.)

Yet, ABD Tank argues that, even if paragraphs 28 and 29 are part of AESIC's and Delta Sonic's attempt to recoup remediation expenses under state law, paragraph 18, which is incorporated in the RCRA claim, suggests that AESIC and Delta Sonic have already cleaned up the site, and thus no imminent or substantial threat to health or the environment exists. Paragraph 18 reads,

The escaping petroleum products have caused great expense to AESIC and Delta Sonic to determine the cause, and to determine the threat and extent of environmental damage, and to remedy the cause and the threat of environmental damage at the Site and at adjacent property, and other serious damage.

*Id.* at 18. While the Court agrees with ABD Tank that paragraph 18, when read in isolation, indicates that AESIC and Delta Sonic have already addressed the environmental damage, the Court finds that when paragraph 18 is read in conjunction with paragraph 24, they indicate that the harm from the underground storage tank petroleum

leak continues to grow. Paragraph 24 makes it clear that petroleum remains in the groundwater and soil at the site and continues to migrate beyond the site. Accepting all allegations as true and construing all reasonable inferences in favor of the AESIC and Delta Sonic, the Court concludes that the Amended Complaint sufficiently alleges that the petroleum leakage from the underground storage tank may present an imminent and substantial endangerment to health or the environment.

*Xerxes' Motion to Dismiss*

### c. Scope of Potential Defendants under § 6972(a)(1)(B)

In support of its Motion to Dismiss, Xerxes argues that, as a manufacturer or supplier of the underground storage tank, it has not contributed to the handling, storage, treatment or disposal of waste, and thus it is not subject to liability under § 6972(a) of the RCRA. Xerxes relies principally on *Zands* for its assertion that it does not fall within the scope of potential defendants under § 6972(a)(1)(B).

In *Zands,* the court noted that § 6972(a)(1)(B) allows any person to commence a civil action "against any person ... who has contributed or who is contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste...." 779 F.Supp. at 1264 (citing 42 U.S.C. § 6972(a)(1)(B)). Because the statute does not define "contributor," the *Zands* court looked to the "ordinary meaning" of the language in the RCRA. *Id.* (citing *Securities Industries Association v. Board of Governors,* 468 U.S. 137, 149, 104 S.Ct. 2979, 2985–86, 82 L.Ed.2d 107 (1984)). While "contribute to" is ordinarily defined as "to be an important factor in; help to cause," the *Zands* court holds that there must be some limitations on the definition of contributor with respect to § 6972(a)(1)(B). 779 F.Supp. at 1264. Thus, the court in *Zands* determined,

[I]ndividuals who provided the materials for the underground storage tank to the installer are one step removed, as are individuals who sold the land to the individuals who had the underground storage tank installed.

*Id.* While under a broad reading of contributor, such individuals could be said to have "helped cause" the leak, the *Zands* court found it appropriate to limit the definition of "contributor" to exclude such individuals. *Id.*

The Court agrees with *Zands* that the individuals who sold the land to the persons who had the underground storage tank installed and the bank which made the loan for the purchase of the land are so far removed that it can be said as a matter of law that they did not contribute to the leakage. However, this Court finds that the definition of "contributor" should not be limited to such an extent to foreclose a suit against the manufacturer of the underground storage tank.[5]

AESIC and ABD Tank allege that XERXES manufactured and designed the underground storage tank which was installed by ABD Tank on Delta Sonic's property in or about August 1984. (Amended Complaint at ¶ 11.) Sometime thereafter, AESIC and Delta Sonic determined that the underground storage tank and the underground storage tank system leaked causing petroleum products to escape from the underground storage tank and the underground storage tank system into the soil and groundwater at the site and onto adjacent property. *Id.* at ¶ 17. AESIC and Delta Sonic's allegations clearly suggest that Xerxes' faulty manufacture and design of the underground storage tank caused the leakage of the petroleum from the underground storage tank into the soil and groundwater. *Id.* at ¶¶ 20, 23 and 24. Given the allegations in the Amended Complaint and accepting those allegations as true, this Court cannot hold as a matter of law that Xerxes, the manufacturer and designer of the underground storage tank which alleged-

---

**5.** When the *Zands* court excluded "individuals who provided the materials for the underground storage tank," it is not clear whether the *Zands* court meant to exclude only those individuals who provided the raw materials necessary to construct and install the underground storage tank or additionally, manufacturers of underground storage tanks.

ly leaked petroleum, does not fall within § 6972(a)(1)(B)'s definition of one who is contributing to the disposal of any solid waste. Thus, the Court denies Xerxes' Motion to Dismiss Count I on the basis that Xerxes does not fall within the scope of defendants liable under § 6972(a)(1)(B).

▮ In addition to its assertion that, as a manufacturer and designer of underground storage tanks, it does not fall within the scope of § 6972(a)(1)(B), Xerxes argues that this Court must dismiss Count I because AESIC and Delta Sonic have failed to comply with the notice requirements of § 6972(b). RCRA § 6972(b)(2)(A) states in relevant part:

No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to—

(i) the Administrator;

(ii) the state in which the alleged endangerment may occur;

(iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section;

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of Subchapter III of this chapter.

42 U.S.C. § 6972(b)(2)(A).

In *Hallstrom v. Tillamook*, 493 U.S. 20, 24, 110 S.Ct. 304, 308, 107 L.Ed.2d 237 (1989), the Supreme Court addressed the notice requirements in § 6972(b)(1)(A) for actions commenced under § 6972(a)(1)(A). Although this Court recognizes that AESIC and Delta Sonic bring Count I of their Amended Complaint under § 6972(a)(1)(B), not § 6972(a)(1)(A), the language of the notice provisions for § 6972(a)(1)(A) and § 6972(a)(1)(B) is identical except for the fact that § 6972(b)(1)(A) prohibits a plaintiff from bringing an action under § 6972(a)(1)(A) prior to sixty days after the plaintiff has given notice to the Administrator, the State and any alleged violator; whereas § 6972(b)(2)(A) prohibits a plaintiff from bringing an action under § 6972(a)(1)(B) prior to ninety days after the plaintiff has given notice to the Administrator, the State and any person alleged to have contributed to the handling, storage, treatment, transportation, or disposal of any solid or hazardous waste. Given the similarities between the notice requirements of § 6972(b)(1)(A) and § 6972(b)(2)(A), this Court finds the Supreme Court's opinion in *Hallstrom* persuasive.

In *Hallstrom*, the Supreme Court held that, because the notification language is expressly incorporated into § 6972(a), "it acts as a specific limitation on a citizen's right to bring a suit." 493 U.S. at 26, 110 S.Ct. at 308–09. Thus, under a literal reading of the statute, compliance with the ninety day notice provision is a mandatory, not optional, condition precedent for suit. *See Hallstrom*, 493 U.S. at 26, 110 S.Ct. at 308–09.

In the present case, AESIC and Delta Sonic notified both ABD Tank and Xerxes of their intention to file a suit under § 6972(a) of the RCRA on May 9, 1994. *See*, Plaintiffs' Exhibit A attached to their Response Memorandum to Xerxes' Motion to Dismiss. Also on May 9, 1994, Delta Sonic and AESIC filed their Complaint naming ABD Tank and Xerxes as Defendants. Thus, Delta Sonic and AESIC cannot contend that they waited the requisite ninety days after providing notice to ABD Tank and Xerxes before filing suit.

AESIC and Delta Sonic present two arguments in an attempt to escape application the Supreme Court's holding in *Hallstrom*. First, AESIC and Delta Sonic argue that, although they filed their original complaint on the same date they provided the Defendants with notice of the suit, they filed an Amended Complaint on June 9, 1994 and Xerxes did not plead or otherwise answer the Amended Complaint until it filed its Motion to Dismiss on October 20, 1994. Thus AESIC and Delta Sonic argue that the action did not really commence until October 20, 1994. The *Hallstrom* court has already rejected a similar argument.

In *Hallstrom*, the plaintiffs argued that if a suit, which was commenced without proper

notice, is stayed until sixty days after notice has been given, the district court should deem the notice requirement to be satisfied. 493 U.S. at 26, 110 S.Ct. at 308–09. The *Hallstrom* court responded that allowing the plaintiffs to stay the action to comply with the notice requirement flatly contradicts the language of the statute. *Id.* The Supreme Court noted that, under Rule 3 of the Federal Rules of Civil Procedure, "[a] civil action is commenced by filing a complaint with the court," and thus the plaintiffs cannot contend that they commenced their suit on any day other than the day on which they filed their complaint. *Id.* (citing Fed.R.Civ.P. 3).

■ Reading § 6972(b)(2) in light of Rule 3, a plaintiff may not file suit before fulfilling the ninety day notice requirement. The fact that Xerxes did not respond to the Amended Complaint until it filed its Motion to Dismiss on October 20, 1994 does not delay the commencement of the suit. As AESIC and ABD Tank have not complied with the notice provision of § 6972(b)(2)(A), their action is barred by the plain terms of the statute and thus Count I of the Amended Complaint must be dismissed. *See Hallstrom,* 493 U.S. at 33, 110 S.Ct. at 312.

However, AESIC and Delta Sonic assert that, even if their suit commenced on May 9, 1994 when they filed their Complaint, Count I should not be dismissed because § 6972(b)(2)(A) provides an exception to the rule that a plaintiff may not commence an action until ninety days after providing notice. RCRA § 6972(b)(2)(A) does provide an exception to the ninety day notification rule. However, such exception provides no aid to AESIC and Delta Sonic. RCRA § 6972(b)(2)(A) prohibits a plaintiff from bringing an action pursuant to § 6972(a)(1)(B) prior to ninety days after plaintiff has given notice of the endangerment "except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter." 42 U.S.C. § 6972(b)(2)(A).

Relying on *Edison Elec. Institute v. U.S.E.P.A.,* 2 F.3d 438, 451–53 (D.C.Cir. 1993), this Court has already held that petroleum leakage from underground storage tanks should be regulated under Subchapter IX, not Subchapter III. Moreover, this Court found that Plaintiffs could bring a civil enforcement action under Subchapter VII § 6972(a) because leaked petroleum from underground storage tanks is a solid waste, not a hazardous waste. As Subchapter III regulates only hazardous wastes, AESIC and Delta Sonic cannot bring a citizen suit pursuant to § 6972(a) for a violation of Subchapter III due to leaking petroleum from underground storage tanks. Thus, AESIC and Delta Sonic cannot take advantage of § 6972(b)(2)(A)'s exception for Subchapter III violations. AESIC and Delta Sonic have not satisfied the ninety day notice requirement, and because the ninety day notice requirement is a prerequisite to bringing suit pursuant to § 6972(a)(1)(B), this Court must dismiss Count I of their Amended Complaint without prejudice.

As jurisdiction in this case is based on a federal question, the RCRA, and as the dismissal of Count I disposes of all federal claims before this Court, this Court may decline to exercise jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(c). This Court is mindful of the Supreme Court's admonition that if the federal claims are dismissed before trial, then the state claims should be dismissed as well. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Accordingly, Counts II through XIV of the Amended Complaint are dismissed without prejudice.

**CONCLUSION**

For the foregoing reasons ABD Tank's Motion to Dismiss is denied. Xerxes' Motion to Dismiss is granted. As AESIC and Delta Sonic have failed to comply with the ninety day notice requirement provided in 42 U.S.C. § 6972(b)(2)(A), they are precluded from bringing a civil enforcement action pursuant to 42 U.S.C. § 6972(a)(1)(B). Accordingly, Count I of the Amended Complaint is dismissed as to both ABD Tank and Xerxes without prejudice. Counts II through XIV of the Amended Complaint are also dismissed without prejudice.